UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE AMALGAMATED SUGAR COMPANY LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>MIKE JOHANNS, SECRETARY OF AGRICULTURE AND UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>    Defendants,<br><br>    and<br><br>AMERICAN CRYSTAL SUGAR COMPANY,<br><br>    Defendant-Intervener. | Case No. 06-167-S-EJL<br><br>**MEMORANDUM ORDER** |

Pending before the Court in this matter are cross motions for summary judgment filed by each of the parties in this action and a motion to strike. The motions are fully briefed and the matters are now ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately

**MEMORANDUM ORDER - 1**

presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2).

## Factual and Procedural Background

The Agricultural Adjustment Act provides a program of Flexible Marketing Allocations for Sugar which is a scheme to stabilize sugar prices by determining the total amount of domestically-produced sugar that can be marketed in the United States in the coming year and then providing marketing allotments and allocations for production of sugar to processing companies in the United States. 7 U.S.C. § 1359aa *et seq.*. Initial allocations under the Act were made to domestic sugar processors on October 1, 2002 based on the amount of each processor produced from 1998 through 2000. The United States Department of Agriculture ("USDA") is charged with administering this program.

Pacific Northwest Sugar Company's ("Pacific") was initially given a permanent allocation of 2.692% of the total beet sugar market allotment. At the same time, the USDA also temporarily redistributed the majority of Pacific's allotment pursuant to 7 U.S.C. § 1359ee(b)(2) because Pacific was unable to market its allocation. Under this provision Pacific retained its permanent allotment. In 2003, Pacific was sold and its

market allotment transferred to Defendant-Intervener American Crystal Sugar Company ("American Crystal").[1]

The dispute in this case is over whether the USDA properly transferred Pacific's market allotment to American Crystal pursuant to 7 U.S.C. § 1359dd(b)(2)(F). The Plaintiff, Amalgamated Sugar Company LLC ("Amalgamated"), argues because Pacific was no longer processing sugar at the time of the transfer that the USDA should have redistributed Pacific's allocation to all sugar processors pursuant to 7 U.S.C. § 1359dd(b)(2)(E). Amalgamated argues Pacific ceased operations in 2001 and sold its assets, factory, and equipment to another entity, Central Leasing, and therefore was no longer a "processor" of sugar. American Crystal asserts that on September 8, 2003 it purchased all of Pacific's assets and that on September 16, 2003 the USDA properly approved of the transfer of Pacific's allocation to American Crystal pursuant to 7 U.S.C. § 1359dd(b)(2)(F); which allows such transfer upon the sale of all assets of one sugar processor to another.

Amalgamated sought reconsideration of the transfer decision arguing Pacific's allocation should have been redistributed to all sugar processors when it ceased its operations in 2001 pursuant to 7 U.S.C. § 1359dd(b)(2)(E). The request for reconsideration was denied and Amalgamated filed an administrative appeal. The USDA Administrative Law Judge ("ALJ") held two hearings totaling five days on the matter and, on February 7, 2005, he issued his Decision and Order reversing the USDA's

---

[1] American Crystal has been allowed to intervene in this action. (Dkt. No. 22).

**MEMORANDUM ORDER - 3**

decision and ordering it to take back the transferred allotment and redistribute the allocation under 7 U.S.C. § 1359dd(b)(2)(E); finding Pacific had terminated its operations prior to the sale to American Crystal.

Both the USDA and American Crystal appealed the decision to the USDA's Judicial Officer.  On March 3, 2006 the Judicial Officer issued his Decision and Order reversing the ALJ and affirming the USDA's transfer of Pacific's allocation to American Crystal.  Amalgamated now brings this action pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, seeking judicial review of the March 3, 2006 Decision and Order of the Judicial Officer as to the administrative proceeding In re Amalgamated Sugar Company, L.L.C. (SMA Docket no. 04-0003) (AR 89).  (Dkt. No. 1).[2] Amalgamated claims the decision is arbitrary, capricious, not in accordance with law, and contrary to USDA's own regulations.

---

[2]

Specifically the Complaint alleges the following:

1) The finding that during the period 1998 through September 16, 2003, Pacific was a beet sugar processor is unsupported by the facts in the record.
2) The above finding is inconsistent with the finding that sugar beet processing operations at the Moses Lake factory ceased in February 2001 and never resumed and that no sugar beet crop was planted in 2002 or 2003.
3) The above finding is inconsistent with the definition of a "processor" in 7 C.F.R. § 1435.2 because Pacific did not commercially produce sugar, have a viable processing facility, or have a supply of sugar beets after February 2001.
4) The decision is unlawful because § 1359dd(b)(2)(E) required the USDA to redistribute the allocation because Pacific had ceased its operation in 2001.
5) The decision is arbitrary, capricious, and contrary to § 1359dd(b)(2)(F) because Pacific was no longer a processor of sugar beets.

**MEMORANDUM ORDER - 4**

**Standards of Review**

I.   Administrative Review:

The USDA's interpretation of 7 U.S.C. §§ 1359dd(2)(E) and (F) is analyzed under the analytic framework laid out in Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). "When reviewing an agency's construction of a statute it is charged with administering, we look first to the statutory text to see whether Congress has spoken directly to the question at hand." J&G Sales Ltd. v. Truscott, 473 F.3d 1043, 1047 (9th Cir. 2007) (citation omitted). "If the statute is clear, we must give effect to the unambiguously expressed intent of Congress' regardless of the agency's view."[3] Northwest Ecosystem alliance v. United States Fish and Wildlife Serv., 475 F.3d 1136, 1141 (9th Cir. 2007) (citing Chevron, 467 U.S. at 842-44). "If the statute is ambiguous, however, we do not simply impose our own independent interpretation. Rather, we must determine how much deference to give to the administrative interpretation. Id. (citing United States v. Mead Corp., 533 U.S. 218, 227-31 (2001)). "The precise degree of deference warranted depends on the statute and agency action at issue." Id. "Under Chevron's classic formulation, [i]f Congress has explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight

---

[3] "If Chevron deference is inapplicable because Congress has not delegated interpretative authority to the agency, the agency's views still 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" Id. (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). The "fair measure of deference" may then range from "great respect" to "near indifference," depending on "the degree of the agency's care, its consistency, formality, and relative expertness, and ... the persuasiveness of the agency's position." Id. (quoting Mead, 533 U.S. at 228.

**MEMORANDUM ORDER - 5**

unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. (quoting Chevron, 467 U.S. at 844). This standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." Id. (citations omitted). Courts should not "substitute [our] judgment for that of the agency." Id. (quoting Citizens To Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). "Our task is simply to ensure that the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." Id. (citing National Ass'n of Home Builders v. Norton, 340 F.3d 835, 841 (9th Cir. 2003) (citations and quotations omitted)).

"When reviewing an agency action to determine whether it is arbitrary and capricious, our scope of review 'is narrow and a court is not to substitute its judgment for that of the agency.'" Truscott, 473 F.3d at 1051 (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). "In this court, the review of whether an agency's action was arbitrary or capricious is highly deferential, presuming the agency action to be valid." Id. (citation omitted). "The agency must, of course, examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id (citation and internal quotation marks omitted). "While we may not remedy deficient agency actions, courts will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Id. at 1051 (internal quotation marks and citations omitted). "Moreover, where the agency's line-drawing does not appear irrational and the party challenging the agency action has not shown that the consequences of the line-drawing are in any respect

**MEMORANDUM ORDER - 6**

dire courts will leave that line-drawing to the agency's discretion." Id. (citation and quotations omitted).

II.     Standard on Summary Judgment:

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[4]  When this standard, the Court must view

---

[4] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**MEMORANDUM ORDER - 7**

all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## Discussion

At issue here are the USDA's interpretation of two provisions of the Agricultural Adjustment Act, 7 U.S.C. §§ 1359dd(b)(2)(E), (F), which deal with the distribution of a processor's allocation upon dissolution/termination of a processor's operation or the sale of one processor to another processor and state:

> (E) Permanent termination of operations of a processor.  If a processor of beet sugar has been dissolved, liquidated in a bankruptcy proceeding, or otherwise has permanently terminated operations (other than in conjunction with a sale or other disposition of the processor or the assets of the processor), the Secretary shall–
>
> (I) eliminate the allocation of the processor provided under this section; and
> (ii) distribute the allocation to other beet sugar processors on a pro rata basis.
>
> (F) Sale of all assets of a processor to another processor.  If a processor of beet sugar (or all of the assets of the processor) is sold to another processor of beet sugar, the Secretary shall transfer the allocation of the seller to the buyer unless the allocation has been distributed to other sugar beet processors under subparagraph (E).

Amalgamated argues Pacific had terminated its operations as a "processor" prior to its sale and, therefore, §1359dd(b)(2)(E) required the USDA to eliminate Pacific's allocation and redistribute the amount to all other processors on a *pro rata* basis.  The USDA and Judicial Officer, however, determined that Pacific had been sold to American Crystal

**MEMORANDUM ORDER  - 8**

thereby invoking § 1359dd(b)(2)(F) which authorized the transfer of Pacific's allocation to American Crystal.

Amalgamated urges the Court to reverse the Judicial Officer and adopt the reasoning of the ALJ and points to 7 C.F.R. § 1435.2 which defines a beet sugar processor as "a person who commercially produces sugar, directly or indirectly, from sugar beets...has a viable processing facility, and a supply of sugar beets for the applicable allotment year." Pacific was not a "processor," Amalgamated argues, because Pacific had stopped processing sugar beets and sold its assets, factory, and equipment to Central Leasing in February of 2001; thus, the USDA should have reallocated Pacific's allotment under § 1359dd(b)(2)(E). To support this conclusion Amalgamated points out that Pacific was deeply in debt, had defaulted on its loans, had ceased processing sugar in February of 2001 and never resumed, had been administratively dissolved by the state of Washington in July 2001, lost its factory and equipment, laid off its employees, and defaulted on its lease agreement. In addition, Amalgamated notes that in 2002 Pacific's Board decided to terminate operations.

The Court has reviewed the Judicial Officer's Decision and finds the interpretation of the relevant statutes is reasonable, not arbitrary or capricious, and supported by the administrative record. <u>Northwest Ecosystem Alliance</u>, 475 F.3d 1143 (citation omitted) ("An agency interpretation that enjoys <u>Chevron</u> status must be upheld if it is based on a reasonable construction of the statute."). The Judicial Officer's interpretation of a "processor" as an entity with a market allocation is reasonable given the use of the word throughout the statute. Congress refers to "processors" throughout the statute as an entity

MEMORANDUM ORDER - 9

with a market allocation; as opposed to a "new entrant" who is not a "processor" because they do not yet have a market allocation. See 7 U.S.C. §§ 1359dd(b)(2)(H), (G). The reasonableness of this definition is apparent when reading the entire statute, including both subparagraphs (E) and (F) which refer to one another. To say that Pacific was not a "processor" under 7 U.S.C. § 1359dd(b)(2)(F), as Amalgamated argues, would also mean Pacific was not a "processor" under 7 U.S.C. § 1359ee(b)(2) and the USDA could not have temporarily reassigned Pacific's shares in 2002. Such a reassignment can be made only from a sugar beet processor who has an allocation but will be unable to market that allocation. Amalgamated was a beneficiary of this reassignment and made no challenge to the USDA's interpretation of Pacific as a processor for purposes of the reassignment. Thus, Pacific was a processor at the time of the sale because it retained its permanent allocation during this time even though, as Amalgamated points out, Pacific's business was struggling. As such, the Court finds the Judicial Officer's Decision's interpretation of the statue to be reasonable and supported by the record.

Amalgamated points to the ALJ Decision urging the Court to find its reasoning more compelling than that of the Judicial Officer. (Dkt. No. 46, p. 2). "When, as here, the findings of the ALJ differ from those of the final administrative decisionmaker, the following standards of review have been held to apply: The fact that the findings of the ALJ differ from those of the full board does not alter the requirement that we affirm [the final decisionmaker's] decisions if supported by substantial evidence. However, consideration of the ALJ's findings will require a more searching scrutiny of the record. Special deference is to be given the ALJ's credibility judgments." Pogue v. United States

Dept. of Labor, 940 F.2d 1287, 1289 (9th Cir. 1991) (citation omitted).  It has not escaped the Court's attention that the ALJ arrived at the opposite conclusion from that of the USDA and the Judicial Officer.  The ALJ concluded that Pacific had terminated its operations prior to September of 2003 and, therefore, the USDA should have redistributed the allocation pursuant to 7 U.S.C. § 1359dd(b)(2)(E).  The ALJ discussed Pacific's downward spiral, much of which occurred prior to it obtaining it's initial October 2002 allotment.  The Judicial Officer also recognized that Pacific was failing in the sugar beet processing business at this time and selling off assets to minimize its losses.  (AR 69, 89).  However, the fact remains that although Pacific was not actually processing sugar beets in September of 2003 it still maintained its initial allotment of the sugar beet market and, as determined above, the Judicial Officer reasonably interpreted the statute to mean Pacific was a "processor" of sugar.  (AR 89).

The more troubling part of the ALJ decision is the determination that there was no sale of "all the assets of the processor" to invoke a transfer of allocation under 7 U.S.C. § 1359dd(b)(2)(F) because Pacific's factory and equipment had already been sold and Pacific's Board had decided to not resume processing operations.  (AR 69).  The ALJ discusses at length his finding that the sale between Pacific and American Crystal was void of any true sale of tangible assets because there were no assets left to be sold and all that remained of Pacific was its market allocation; raising the concern that to allow such a sale to go forward allows an end-run around the requirements for new entrants in the sugar

beet processing industry.[5] In reaching his decision, the Judicial Officer considered this fact and ultimately concluding that the sale was appropriate to invoke the transfer of Pacific's allocation under 7 U.S.C. §§ 1359dd(b)(2)(F). (AR 89, pp. 15-23). The Judicial Officer determined that based upon the record in this case Pacific was a "processor" at the time of the September 8, 2003 sale, American Crystal purchased all of Pacific's assets, and, therefore, the USDA's transfer under 7 U.S.C. §§ 1359dd(b)(2)(F) was proper. Though the ALJ decided differently, the Court finds the Judicial Officer's decision to be reasonable. In reaching his decision, the Judicial Officer properly relied on the facts in the record, many of which are identical to the ALJ's findings, including the correspondence exchanged between the parties regarding the sale of Pacific. (AR 89). These letters evidence the fact that Pacific maintained its initial allocation at the time of the sale and that American Crystal had purchased all of Pacific's assets. Having considered the reasoning of both the ALJ and the Judicial Officer in light of the record, the Court finds the Judicial Officer's conclusions to be reasonable and not arbitrary or capricious based on the record in this case. (AR 89). Courts should not "substitute [our] judgment for that of the agency. Our task is simply to ensure that the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made." <u>Northwest Ecology Alliance</u>, *supra*. The Judicial Officer has done so here.

---

[5] The ALJ pointing to the Commodity Credit Corporation's ("CCC") inconsistent treatment of the potential buyers of Pacific. (AR 69, p. 36).

**MEMORANDUM ORDER - 12**

**ORDER**

THEREFORE IT IS HEREBY ORDERED as follows:

1) Defendants United States of America and American Crystal Sugar Company motions for summary judgment (Dkt. Nos. 36, 37) are **GRANTED**.

2) Plaintiff's motion for summary judgment (Dkt. No. 33) is **DENIED**.

3) Plaintiff's motion to strike (Dkt. No. 49) is **MOOT**.

DATED: **September 6, 2007**

Honorable Edward J. Lodge
U. S. District Judge